IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | Case No.  3:21-cv-149 (Groh) |
| v. | **COMPLAINT AND** <br> **JURY TRIAL DEMAND** |
| UFP RANSON, LLC, | ELECTRONICALLY FILED <br> 09/13/2021 <br> U.S. DISTRICT COURT <br> Northern District of WV |
| Defendant. | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the bases of race (Black), religion (Islam), and retaliation and to provide appropriate relief to Charging Party Eric Davis ("Davis") and a class of aggrieved current and former Black employees who were adversely affected by such practices. As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission ("EEOC" or "the Commission") alleges that Defendant UFP Ranson, LLC ("Defendant"), subjected Davis to a hostile work environment because of his race (Black) and religion (Islam) in violation of Title VII. The Commission further alleges that Defendant subjected a class of current and former Black employees to a hostile work environment because of race (Black) in violation of Title VII. The Commission further alleges that Defendant subjected Davis to discharge from his employment because of his race (Black) and in retaliation for engaging in conduct protected under Section 704(a) of Title VII.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this civil action under 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and

(3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.   Venue is proper in the U.S. District Court for the Northern District of West Virginia under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because the alleged unlawful employment practices were committed in the State of West Virginia (Jefferson County) and within this judicial district.

## PARTIES

3.   Plaintiff U.S. Equal Employment Opportunity Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action under Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.   At all relevant times, Defendant UFP Ranson, LLC, a Michigan limited liability company, has continuously been doing business in the State of West Virginia (Jefferson County), as well as other states, and has continuously employed at least 15 employees.

5.   At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

6.   Throughout calendar years 2018, 2019, and 2020, Defendant continuously employed more than 100 employees.

## ADMINISTRATIVE PROCESS

7.   More than 30 days prior to the institution of this lawsuit, Charging Party Eric Davis filed a charge of discrimination with the Commission alleging that Defendant violated Title VII.

8. On February 12, 2021, the Commission issued to Defendant an administrative Determination finding reasonable cause to believe that Defendant violated Title VII with respect to Davis by subjecting him to a hostile work environment because of race (Black) and religion (Islam), discharging him because of his race, and discharging him in retaliation for engaging in conduct protected under Title VII; and had violated Title VII with respect to a class of Black employees by subjecting them to a hostile work environment because of race (Black). The Determination also invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide Defendant an opportunity to remedy the discriminatory practices described in the administrative Determination.

10. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. On May 17, 2021, the Commission issued to Defendant a Notice of Failure of Conciliation.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13. Since at least August 9, 2019, Defendant has engaged in unlawful employment practices at its operations in Ranson, West Virginia, and other operations in violation of Sections 703(a)(1) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a).

### Eric Davis's Employment

14. Defendant employed Davis as a Lumber Pack Maker at its facility in Ranson, West Virginia, from on or about May 28, 2019, until on or about June 9, 2020.

15. Davis's race is Black.

16. Davis's religion is and at all relevant times has been Islam.

17. For approximately the first three to four months of his employment, Davis worked in the fencing department, where his supervisor was Crew Leader Ronald Lease.

18. After approximately the first three to four months of his employment and continuing through on or about June 9, 2020, Davis worked in the stacking department, where his supervisor was Hourly Production Supervisor/Treating Supervisor Robert Reece.

19. Reece's race is White.

20. While Davis worked in the stacking department, Defendant subjected him to a continuing unlawful employment practice in the form of an unwelcome and offensive hostile work environment because of his race and religion, including but not limited to the following conduct:

    a. Davis was subjected to coworkers' regular use of racial epithets directed at him, as well as used in his presence, in the workplace. Such racial epithets included the term "nigger" and the phrase "Black boy," as well as the statement, "We're about to have BLM [Black Lives Matter] in here. Get ready for the protestors." Davis heard a White maintenance employee named Rob say, "Here comes Kunta Kinte." Davis heard another employee describe music being played in the stacking department as "jungle music." Davis was subjected to coworkers' use of racial epithets directed at him, as well as used in his presence, in the workplace at least two to three times per week. Among the coworkers who used such racial epithets in the workplace were Rob, Saw Operator II William Jenkins ("Jenkins"), and a forklift driver named Mike, all of whom are White.

    b. Davis was subjected to coworkers' regular making of racist jokes directed at him, as well as used in his presence, in the workplace. These racist jokes demeaned

4

Black persons' intelligence, appearance, and character and often used the word "nigger." Davis was subjected to coworkers' making of racist jokes directed at him, as well as used in his presence, in the workplace at least two to three times per week. Among the coworkers who made such racist jokes in the workplace were Jenkins, a forklift driver named Mike, and a maintenance employee named Rob, all of whom are White.

      c.      Davis was subjected to coworkers' regular making of derogatory remarks about his religion (Islam) directed at him, as well as used in his presence, in the workplace. These derogatory remarks included remarks about his need to engage in daily prayers; remarks about his wearing of a kufi; intimations about his knowledge of "the next Osama Bin-Laden"; remarks about Islamist-terrorist suicide bombers; announcements of "Here comes Farrakhan"; and calling him "Arab" and "nigger Muslim." Davis was subjected to coworkers' making of derogatory remarks about his religion directed at him, as well as used in his presence, in the workplace at least two to three times per week. Among the coworkers who made such derogatory remarks in the workplace were Jenkins, a forklift driver named Mike, and a maintenance employee named Rob, all of whom are White.

      d.      Davis engaged in daily prayers in the workplace, and when he did so, Jenkins regularly threw items at him.

      e.      In an effort to bring about his voluntary resignation, Jenkins and a forklift driver named Mike regularly ordered Davis to stack lumber by hand. They ordered Davis to do so even when the lumber-stacking machine was operational and available for use. Stacking lumber by hand is much more strenuous work than stacking lumber using the lumber-stacking machine.

  f. In late summer or early fall 2019, Davis reported the racial epithets, racist jokes, derogatory remarks about his religion, and other harassment to Reece. Reece did not conduct an investigation and otherwise failed to take any action to correct and prevent the workers' harassment of Davis.

  g. In late summer or early fall 2019, Davis reported the racial epithets, racist jokes, derogatory remarks about his religion, and other harassment to Hourly Safety Coordinator I William Ramon ("Ramon"). Ramon told Davis that he would "handle it." From late summer or early fall 2019 until on or about June 9, 2020, Davis reported the racial epithets, racist jokes, derogatory remarks about his religion, and other harassment to Ramon approximately four to five times. Ramon did not conduct an investigation and otherwise failed to take any reasonably diligent action to correct and prevent the workers' harassment of Davis.

  h. In fall 2019, Defendant's supervisory officials conducted a meeting attended by Reece, Ramon, Jenkins, the forklift driver named Mike, Lumber Pack Maker Scott McDaniel ("McDaniel"), and Davis. The harassment of Davis was discussed at the meeting, and Davis and McDaniel expressed their opposition to that harassment. However, Defendant's supervisory officials who were present failed to conduct an investigation or take other reasonable corrective or preventive action. Instead, the meeting ended after Jenkins raised his voice, referring to the meeting as "a bunch of crybaby bullshit," and walked out.

  i. Davis was subjected to coworkers' regular making of physical threats to him in the workplace. Davis heard Jenkins say, "I'll show this nigger what these trees are for," which statement implied that Jenkins would lynch Davis. Jenkins also told Davis that

he (Davis) had a "bullseye on [his] back" and, in late 2019 or early 2020, showed him photos of guns, including semiautomatic and sniper rifles, on his (Jenkins's) phone while saying, "I could hit you from across the trees." Approximately four times between late summer or early fall 2019 and winter 2020, Jenkins told Davis that he wanted to "bust a cap in his ass," which means that Jenkins wanted to shoot Davis. Jenkins and other coworkers made statements about knowing Davis's home address.

  j. Shortly after each time that Jenkins physically threatened him, Davis reported the incident to Reece, Ramon, and Production Manager Kenneth Ruffner Jr. ("Ruffner"). Reece, Ramon, and Ruffner always dismissed Davis's complaints and told him not to pay attention to Jenkins. Reece, Ramon, and Ruffner did not conduct an investigation and otherwise failed to take any action to correct and prevent Jenkins's harassment of Davis.

  k. Shortly after Jenkins showed him photos of his guns on his phone and made this statement, Davis reported the incident to multiple people. He reported it to Office Administrator Jennifer Poston ("Poston"), who performs and at all relevant times has performed human-resources operations for Defendant in Ranson, West Virginia. She told Davis that someone would speak with Jenkins and that if he (Davis) was scared, he should call the police. Davis also reported it to Ramon and Ruffner. Ramon told Davis that he would "handle it." Ramon never followed up with Davis about his report. Poston, Ramon, and Ruffner did not conduct an investigation and otherwise failed to take any action to correct and prevent Jenkins's harassment of Davis.

  l. In winter 2020, shortly after Jenkins showed him photos of his guns on his phone and made the aforementioned statement, Defendant's supervisory officials

7

conducted a second meeting attended by Reece, Ramon, Jenkins, the forklift driver named Mike, McDaniel, and Davis. The harassment of Davis was discussed at the meeting, and Davis and McDaniel expressed their opposition to that harassment. However, Defendant's supervisory officials who were present failed to conduct an investigation or take other reasonable corrective or preventive action. During the meeting, Jenkins shouted, "I'm tired of this nigger. We're going to have a Million Man March in here," and walked out. Ramon followed him out before returning to the meeting. Ramon asked Reece if he had anything to say, and Reece responded, "No, you handled it."

   m.  In or about April or May 2020, coworkers regularly surrounded the timeclock where Davis clocked in and clocked out at the beginnings and ends of his scheduled shifts, respectively. These coworkers surrounded the timeclock when Davis needed to clock in and clock out in an effort to menace and intimidate him. Among the coworkers who surrounded the timeclock were Jenkins, a forklift driver named Mike, and a maintenance employee named Rob.

   n.  In or about April or May 2020, Davis reported the coworkers surrounding the timeclock to Reece. Reece never investigated or took any action to correct or prevent the workers' menacing and intimidation of Davis.

   o.  During Davis's employment with Defendant, Reece called McDaniel, whose race is White, into his office at Defendant and told him that if he (McDaniel) could cause Davis and another Black employee named James to voluntarily resign, Reece would give McDaniel a pay raise. McDaniel refused Reece's offer.

   p.  Reece told McDaniel that he did not want Black employees working for him because he could not "get any work out of them."

8

  q. Approximately six months before Davis's last day of employment with Defendant, McDaniel reported his coworkers' racial harassment of Davis to Ruffner. Ruffner told McDaniel that he needed to bring this issue to the attention of his (McDaniel's) supervisor, Reece. Ruffner did not conduct an investigation and otherwise failed to take any action to correct and prevent the workers' harassment of Davis.

  r. During Davis's employment with Defendant, McDaniel reported his coworkers' racial harassment of Davis to Plant Manager/General Manager of Operations Micah Garrison ("Garrison"). Garrison told McDaniel that he needed to bring this issue to the attention of his (McDaniel's) supervisor, Reece. Garrison did not conduct an investigation and otherwise failed to take any action to correct and prevent the workers' harassment of Davis.

  s. During Davis's employment with Defendant, Reece's supervisor was Garrison.

  t. Approximately three to four times during Davis's employment with Defendant, McDaniel expressed his opposition to his coworkers' racial harassment of Davis to Reece. Reece did not conduct an investigation and otherwise failed to take any action to correct and prevent the workers' harassment of Davis.

  u. On one occasion after McDaniel had expressed his opposition to his coworkers' racial harassment of Davis, Reece asked him, "Why would you take up for some Black guy?"

21. At no time did Defendant ever conduct an investigation of race and/or religious harassment by any employee against Davis.

22. At no time did Defendant ever take disciplinary action against any employee for race and/or religious harassment against Davis.

23. On May 28, 2020, Reece administered an "Employee Development Report," which is a performance evaluation, to Davis.

24. While Reece was discussing the "Employee Development Report," he told Davis that his (Davis's) performance evaluation would be based on an evaluation of the performance of the entire stacking department. Davis responded that this assessment framework deviated from his understanding of the assessment framework and was not fair, to which Reece responded, "Rules change." Davis then told Reece that he intended to contact the EEOC.

25. The "Employee Development Report" that Reece administered to Davis on May 28, 2020, indicated that Davis's work performance in 2019 had been unsatisfactory.

26. Prior to the "Employee Development Report" dated May 28, 2020, Reece had never told Davis that his work performance was unsatisfactory.

27. On June 4, 2020, Davis contacted the EEOC by submitting an online inquiry report alleging that Defendant had subjected him to discrimination because of his race (Black), color, religion (Islam), and age (52).

28. On or about June 5, 2020, Davis told Reece that he had contacted the EEOC.

29. Approximately four days later, on or about June 9, 2020, Defendant discharged Davis, purportedly for the alleged unsatisfactory work performance set forth in the "Employee Development Report" dated May 28, 2020.

30. Defendant discharged Davis from his employment because of his race (Black).

31.     Defendant discharged Davis from his employment because of his complaints about racial harassment, his stated intention to contact the EEOC, and his institution of EEOC administrative proceedings.

### Kevin Ross's Employment

32.     Defendant employed Kevin Ross ("Ross") as a Forklift Operator I at its facility in Ranson, West Virginia, from on or about April 16, 2018, until on or about October 5, 2019; from about November 2019 until on or about October 7, 2020; and from about early April 2021 until about late April 2021.

33.     Ross's race is Black.

34.     From about early April 2021 until about late April 2021, Ross's supervisor was Crew Leader Jeffrey Rinker ("Rinker").

35.     Rinker's race is White.

36.     Beginning on or about April 16, 2018, and continuing through on or about October 5, 2019; about November 2019 and continuing through on or about October 7, 2020; and about early April 2021 and continuing through about late April 2021, Defendant subjected Ross to a continuing unlawful employment practice in the form of an unwelcome and offensive hostile work environment because of his race, including but not limited to the following conduct:

   a.    Beginning on or about April 16, 2018, and continuing through on or about October 5, 2019, and beginning about November 2019 and continuing through on or about October 7, 2020, Ross was subjected to coworkers' regular use of racial epithets directed at him, as well as used in his presence, in the workplace. Such racial epithets included the term "nigger." Ross was subjected to coworkers' use of racial epithets directed at him, as well as used in his presence, in the workplace approximately two times per week. Among

11

the persons who used such racial epithets in the workplace were Rinker and employees named Mitch, Shane, and Rusty, all of whom are White.

  b. Throughout all periods of his employment with Defendant, Ross was subjected to coworkers' regular making of racist jokes in his presence in the workplace. These racist jokes demeaned Black persons' ability to perform the work at Defendant in a timely manner and made derogatory, stereotypical references to the types of work to which Black persons are suited. Davis was subjected to coworkers' making of racist jokes in his presence in the workplace approximately two times per week. Among the coworkers who made such racist jokes in the workplace were Rinker and employees named Mitch, Shane, and Rusty, all of whom are White.

  c. In approximately fall 2018, Ross reported the racial epithets and racist jokes to Crew Leader William Nelson ("Nelson"). At the time, Ross did not know the names of the employees who had used the racial epithets and made the racist jokes but did know that they worked in the assembly mill, and Ross pointed them out to Nelson. Nelson stated that he would talk to Garrison. From on or about April 16, 2018, through on or about October 5, 2019, Ross reported the racial epithets and racist jokes to Nelson approximately twice. Nelson never followed up with Ross about his reports, did not conduct an investigation, and otherwise failed to take any action to correct and prevent the workers' harassment of Ross.

  d. In approximately summer and fall 2020, Ross reported the racial epithets and racist jokes to Garrison. Garrison apologized to Ross and said that he did not have to worry about the racial epithets and racist jokes anymore. Garrison never followed up with

Ross about his reports, did not conduct an investigation, and otherwise failed to take any action to correct and prevent the workers' harassment of Ross.

      e.      In or about September 2020, Ross and Rinker were discussing different methods of loading a box trailer. Rinker disagreed with Ross's preferred method and said, "You Black guys think you know everything."

37.      At no time did Defendant ever conduct an investigation of race harassment by any employee against Ross.

38.      At no time did Defendant ever take disciplinary action against any employee for race harassment against Ross.

## A Class of Aggrieved Current and Former Black Employees

39.      Since at least August 9, 2019, and continuing through the present, Defendant has subjected a class of current and former Black employees to a continuing unlawful employment practice in the form of an unwelcome and offensive hostile work environment because of their race, including but not limited to the following conduct:

      a.      Black employees have been subjected to White coworkers' regular use of racial epithets directed at them, as well as used in their presence, in the workplace. Such racial epithets have included the term "nigger."

      b.      Black employees have been subjected to White coworkers' regular making of racist jokes in their presence in the workplace.

      c.      Black employees have been subjected to White coworkers' regular making of derogatory remarks about Black persons' anatomy, as well as references to the types of work to which Black persons are suited, in their presence in the workplace. Such derogatory remarks have included the term "nigger."

      d.      Black employees have been subjected to more onerous work assignments than White employees. To wit, Black employees have been required to complete strenuous work assignments without assistance from coworkers whereas White employees have been allowed to complete the same work assignments with assistance from coworkers, and Black employees have been required to continue working while White employees have been allowed to take breaks.

## CAUSES OF ACTION

**COUNT I: Hostile Work Environment Because of Race and Religion (Eric Davis)**

40.      The Commission incorporates by reference all allegations set forth in Paragraphs 1–39, above.

41.      Defendant subjected Davis to unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by creating a hostile work environment because of race (Black) and religion (Islam).

42.      The discriminatory practices described above were unwelcome; based on race and religion; offensive; and sufficiently severe or pervasive, both objectively and subjectively, to alter the terms or conditions of employment for Davis.

43.      Defendant is vicariously liable for the harassing conduct of its supervisory employee, Hourly Production Supervisor/Treating Supervisor Robert Reece.

44.      Defendant knew or should have known about the harassment committed by its non-supervisory employees but failed to take prompt action reasonable calculated to end the harassment and prevent it from reoccurring.

45. The effect of the practices complained of in Paragraphs 40–44, above, has been to deprive Davis of equal employment opportunities and otherwise adversely affect his status as an employee because of his race (Black) and religion (Islam).

46. The unlawful employment practices complained of above were intentional.

47. The unlawful employment practices complained of above were done with malice or reckless indifference to Davis's federally protected rights.

**COUNT II: Hostile Work Environment Because of Race (Kevin Ross)**

48. The Commission incorporates by reference all allegations set forth in Paragraphs 1–39, above.

49. Defendant subjected Ross to unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by creating a hostile work environment because of race (Black).

50. The discriminatory practices described above were unwelcome; based on race; offensive; and sufficiently severe or pervasive, both objectively and subjectively, to alter the terms or conditions of employment for Ross.

51. Defendant knew or should have known about the harassment committed by its non-supervisory employees but failed to take prompt action reasonably calculated to end the harassment and prevent it from reoccurring.

52. The effect of the practices complained of in Paragraphs 48–51, above, has been to deprive Ross of equal employment opportunities and otherwise adversely affect his status as an employee because of his race (Black).

53. The unlawful employment practices complained of above were intentional.

54. The unlawful employment practices complained of above were done with malice or reckless indifference to Ross's federally protected rights.

**COUNT III: Hostile Work Environment Because of Race (Class of Black Employees)**

55. The Commission incorporates by reference all allegations set forth in Paragraphs 1–39, above.

56. Defendant subjected a class of current and former Black employees to unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by creating a hostile work environment because of race (Black), including but not limited to employees' regular use of racial epithets, regular making of racist jokes, and regular imposition of more onerous job duties.

57. The discriminatory practices described above were unwelcome; based on race; offensive; and sufficiently severe or pervasive, both objectively and subjectively, to alter the terms or conditions of employment for a class of current and former Black employees.

58. Defendant is vicariously liable for the harassing conduct of its supervisory employee, Hourly Production Supervisor/Treating Supervisor Robert Reece.

59. Defendant knew or should have known about the harassment committed by its non-supervisory employees but failed to take prompt action reasonably calculated to end the harassment and prevent it from reoccurring.

60. The effect of the practices complained of in Paragraphs 55–59, above, has been to deprive a class of current and former Black employees of equal employment opportunities and otherwise adversely affect their status as employees because of their race (Black).

61. The unlawful employment practices complained of above were intentional.

62. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of a class of current and former Black employees.

### COUNT IV: Discharge Because of Race and in
### Retaliation for Engaging in Protected Activity (Eric Davis)

63. The Commission incorporates by reference all allegations set forth in Paragraphs 1–39, above.

64. Defendant subjected Davis to unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by discharging him because of his race (Black).

65. Defendant subjected Davis to unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by discharging him because of (a) his protected opposition to employment practices made unlawful by Title VII in the manner described in Paragraphs 20.f, .g, .h, .j, .k, .l, and .n and 24, above, and (b) because of his participation in a proceeding under Title VII in the manner described in Paragraphs 24, 27, and 28, above.

66. The effect of the practices complained of in Paragraphs 63–65, above, has been to deprive Davis of equal employment opportunities and otherwise adversely affect his status as an employee because of his race (Black) and because of his conduct protected under Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

67. The unlawful employment practices complained of above were intentional.

68. The unlawful employment practices complained of above were done with malice or reckless indifference to Davis's federally protected rights.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.	Grant a permanent injunction enjoining and restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it from engaging in race discrimination, religious discrimination, or retaliation, including maintaining a hostile work environment based on race or religion, discharging employees because of their race, discharging employees in retaliation for engaging in activities protected under Section 704(a) of Title VII, and any other employment practice which discriminates on the basis of race, religion, or statutorily protected activity.

B.	Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for Black employees, Muslim employees, and employees who have engaged in activities protected under Section 704(a) of Title VII, and which eradicate the effects of its past and present unlawful employment practices.

C.	Order Defendant to make whole Charging Party Eric Davis by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement with retroactive seniority and benefits or front pay in lieu thereof.

D.	Order Defendant to make whole Charging Party Eric Davis, Kevin Ross, and a class of current and former Black employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Paragraphs 13–68, above, in amounts to be determined at trial.

E.	Order Defendant to make whole Charging Party Eric Davis, Kevin Ross, and a class of current and former Black employees by providing compensation for past and future non-

pecuniary losses resulting from the unlawful practices complained of in Paragraphs 13–68, above, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial.

  F. Order Defendant to pay Charging Party Eric Davis, Kevin Ross, and a class of current and former Black employees punitive damages for the malicious and reckless conduct described in Paragraphs 13–68, above, in amounts to be determined at trial.

  G. Grant such further relief as the Court deems necessary and proper in the public interest.

  H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

          Respectfully submitted,

          U.S. EQUAL EMPLOYMENT
          OPPORTUNITY COMMISSION

          GWENDOLYN YOUNG REAMS
          ACTING GENERAL COUNSEL
          WASHINGTON, D.C.

          LISA MORELLI
          ACTING ASSOCIATE GENERAL COUNSEL
          WASHINGTON, D.C.

          DEBRA M. LAWRENCE
          REGIONAL ATTORNEY
          EEOC – Philadelphia District Office

RONALD L. PHILLIPS
SUPERVISORY TRIAL ATTORNEY
OH Bar No. 0070263
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Phone: (410) 801-6714
Fax: (410) 962-4270
Email: ronald.phillips@eeoc.gov

GREGORY A. MURRAY
SENIOR TRIAL ATTORNEY
PA Bar No. 316144
EEOC – Pittsburgh Area Office
William S. Moorhead Federal Building
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Phone: (412) 588-6907
Fax: (412) 395-5749
Email: gregory.murray@eeoc.gov

RANDOLPH J. BERNARD
ACTING UNITED STATES ATTORNEY

BY:  STEPHANIE K. SAVINO
ASSISTANT UNITED STATES ATTORNEY
WV State Bar No. 13684
United States Attorney's Office
U.S. Courthouse and Federal Building
1125 Chapline Street, Suite 3000
Wheeling, WV 26003
Phone: (304) 234-0100
Fax: (304) 234-0112
Email: stephanie.k.savino@usdoj.gov

*Counsel for United States*