## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## MARTINSBURG

**U.S. EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION,**

    Plaintiff,

v.                                      **CIVIL ACTION NO.: 3:21-CV-149**
                                               **(GROH)**

**UFP RANSON, LLC,**

    Defendant.

### ORDER DENYING UFP RANSON, LLC'S MOTION FOR SUMMARY JUDGMENT

This case presents allegations of a hostile work environment and unlawful discharge based on race and in retaliation for engaging in protected activity. The Defendant moved for summary judgment on counts II, III, and IV. The Plaintiff opposes the Motion, arguing material factual disputes exist and must be resolved by a jury.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence establishing there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also id. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249.

"Title VII extends the promise that no one should be subject to a discriminatorily hostile work environment." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 310 (4th Cir. 2008). Specifically, it is "unlawful for an employer to 'discriminate against any individual with respect to [ ] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Robinson v. Priority Auto.

Huntersville, Inc., 70 F.4th 776, 781 (4th Cir. 2023) (quoting 42 U.S.C. § 2000e-2(a)(1)). Because "the statute references the terms, conditions, or privileges of employment, courts read it to reach beyond economic or tangible discrimination, to forbid subjecting an employee to a hostile work environment. Id. (quotations removed).

"In order to prove that [the plaintiff] suffered from a 'discriminatorily hostile or abusive work environment,' the EEOC must demonstrate that the harassment was (1) unwelcome, (2) because of [race], (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to the employer. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, (1993) (cleaned up)).

The Fourth Circuit has considered whether "conduct targeted at persons other than [the plaintiff] cannot be considered, [and it held that] position finds no support in the law." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001). The Spriggs Court explained it was "concerned with the environment of workplace hostility, and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and his supervisor." Id. (citing Walker v. Ford Motor Co., 684 F.2d 1355, 1359 n.2 (11th Cir.1982) ("The fact that many of the epithets were not directed at [the plaintiff] is not determinative. The offensive language often was used in [his] presence."); see also Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir.1987) ("[O]ne of the critical inquiries in a hostile environment claim must be the environment. Evidence of a general work atmosphere therefore—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim.").

In its statement of undisputed material facts, the Defendant states, "[d]uring an interview on December 3, 2020, Ross told the EEOC that nobody at UFP Ranson ever used the n-word around him, nobody at UFP Ranson had ever directed any racial remarks or jokes at him, he never heard a supervisor use the N-word at UFP Ranson, he was not aware of any supervisor who had ever observed any alleged discrimination or harassment, and that he knew that UFP Ranson would investigate reports of use of the N-word and would take disciplinary action against anyone found to have used that word." ECF No. 117 at 7–8.

The EEOC's notes from this interview reveal the following: Ross told the EEOC that he heard a racial comment, racial joke, or the n-word "[c]lose to every day" that he worked for the Defendant; [b]lacks could do something and get fired for it, but whites could do the same thing, but not get fired; white employees "will do things subtly to aggravate Black employees to get them to quit. That's the main cause of the revolving door"; in one example of this, a White employee sped up a saw while operating a machine so that a Black employee was forced to work unnecessarily fast, which caused him to quit; if others "don't know that a Black person is within earshot, [the n-word is] used regularly and frequently; ten out of ten employees would tell you there's a racial vibe; they have never had a Black supervisor or crew leader; the n-word was not used when Ross was around because "[t]hey knew better"; he could not say that he ever heard a supervisor use the N-word, but another employee previously said to him, "get out of my way, N-word, and finally, Ross said he didn't make a whole lot of complaints about race because he "knew that would have been met with a negative response. ECF No. 117-1 at 232–33.

4

The Court appreciates persuasive legal writing, including framing the evidence favorably to a client's cause. Yet, if it goes too far, it can call the argument, and sometimes even a lawyer's credibility, into question. The Court is not suggesting that any attorney's credibility has been undermined at this point, but the Defendant's argument is called into question by how much liberty has been taken when summarizing what should be *undisputed* material facts. The Court finds the Defendant's stated facts, as they relate to several of the individuals being represented by the EEOC, are mischaracterized at best and inaccurate at worst.

Beyond this, the briefing and exhibits in this case are replete with the "n-word." In this Court's experience, there has not been another case where this word appeared so many times in the evidence and attorneys' papers. Here, the evidence suggests—particularly when considered in a favorable light toward the Plaintiff—that the word was loosely used throughout the Defendant's workplace on a regular basis.

As the Fourth Circuit has explained,

> Far more than a "mere offensive utterance," the word "nigger" is pure anathema to African–Americans. "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." Rodgers v. Western–Southern Life Ins. Co., 12 F.3d 668, 675 (7th Cir.1993) (citation and internal quotation marks omitted).

Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir. 2001).

"The word 'nigger' is more than the 'mere offensive utterance' listed as the third factor in the test. No word in the English language is as odious or loaded with as terrible a history." Oladokun v. Grafton Sch., Inc., 182 F. Supp. 2d 483, 493 (D. Md. 2002). "Where such an abhorrent slur is alleged, there is no question that its use was offensive,

5

unwelcome, and racially motivated." Roberts v. Fairfax Cty. Pub. Schs., 858 F.Supp.2d 605, 610 (E.D. Va. 2012) (citing Shields v. Fed. Exp. Corp., 120 Fed.Appx. 956, 961 (4th Cir. 2005) (unpublished) (per curiam)).

To the extent the Defendant avers this Court must refrain from considering inappropriate conduct directed at others, the argument is misplaced. As explained above, the Fourth Circuit rejected a similar argument in Spriggs: "Although Diamond contends that conduct targeted at persons other than Spriggs cannot be considered, its position finds no support in the law. We are, after all, concerned with the 'environment' of workplace hostility, and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and his supervisor." Spriggs, 242 F.3d at 184 (4th Cir. 2001).

> The Defendant's arguments, for the most part, are best saved for the trier of fact at closing argument. This Court is unpersuaded by the Defendant's arguments, based on the record before it, that the Plaintiff has failed to establish the elements of a *prima facie* case. A trier of fact could certainly find that the instances cited by the Plaintiff do not constitute the sort of isolated or trivial instances which remain outside the purview of Title VII. . . . Nor is repeated use of the ancient epithet—"nigger"—trivial as a matter of law.
>
> Furthermore, this Court is not persuaded that it should matter that . . . comments [were] made to an individual other than the Plaintiff. In fact, a contrary inference is warranted. This instance, in particular, bears witness to tolerance by upper management . . . of such behavior. In addition, the more people before whom . . . such conduct [occurred] without any repercussions, the more reasonable it is that the working environment as a whole . . . was abusive.

Brumback v. Callas Contractors, Inc., 913 F. Supp. 929, 939 (D. Md. 1995)

Finally, the Defendant leans heavily on the existence of anti-discrimination policies and procedures it had in place. But, "[t]he mere existence of an anti-harassment policy does not allow [Defendant] to escape liability." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d

306, 320 (4th Cir. 2008). The Sunbelt Court went on to explain that even though "the adoption of an effective anti-harassment policy is an important factor in determining whether it exercised reasonable care, the policy must be effective in order to have meaningful value." Id. (cleaned up). The mere "existence of the policy might still leave a jury unconvinced that [a defendant] worked in a serious fashion to combat the rampant harassment in its midst—harassment of which it was repeatedly made aware and which nonetheless continued unabated." Id. The same is true in the case before this Court.

In short, the Plaintiff has established a prima facie case for each of its claims, and there are genuine disputes as to material facts, which must be resolved by the trier of fact. Therefore, the Defendant's Amended Motion for Summary Judgment is **DENIED**. ECF No. 116. The Clerk of Court is **DIRECTED to TERMINATE** Defendant's Original Motion. ECF No. 105.

The Clerk of Court is further **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED**: August 17, 2023

GINA M. GROH
UNITED STATES DISTRICT JUDGE